# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF OKLAHOMA

**KENNETH EUGENE BARRETT,** )
)
*Movant,* )
)
**v.** )
)
**UNITED STATES OF AMERICA,** )
)
*Respondent.* )

---

**EXHIBIT 14**

---

# DECLARATION OF RICHARD GRAY

I, Richard Gray, a person over eighteen (18) years of age and competent to testify, declare as follows:

1. I am an attorney in private practice in Wagoner, Oklahoma.

2. I served as District 27 District Attorney for Cherokee, Sequoyah, Adair and Wagoner counties from 2003 through 2007.

3. In the course of my service as District Attorney, I became very familiar with the practices of the District 27 Drug Task Force and particularly with Agent Clint Johnson, who was the head of the Task Force and falsely accused me of taking monies from the Drug Task Force safe in Tahlequah in 2006, a matter in which I was acquitted and my record expunged.

4. Though I did not prosecute Kenneth Barrett for murder in the death of Oklahoma Highway Patrol Trooper David W. "Rocky" Eales, I was the District Attorney during the re-trial of Kenneth Barrett in Sequoyah County and during the federal proceedings which followed. As a result, I am familiar with matters pertaining to those prosecutions.

5. I was elected district attorney in a hotly contested race against then District Attorney Dianne Barker Harrold. Because I was resented by holdovers of Ms. Barker Harrold's administration, I was kept in the background during the state prosecution against Kenneth Barrett.

6. I was shoved even further into the background when I stated that there were problems with Mr. Barrett's case, including that John Philpot could have simply gone to Mr. Barrett's property and brought him in and that there was no need for a nighttime, no knock warrant. Because Mr. Barrett did not have running water, there was no danger that any drug evidence could have been readily or easily destroyed.

1

7. After taking office, on several occasions, I was visited by members of the Oklahoma Highway Patrol ["OHP"], whose names I do not know but I do know that they were very high up in the ranks, and advised that they wanted the former prosecutor Darrell Dowty to retry the state case. As compensation for my agreement to permit Darrell Dowty to retry the case, OHP and I agreed that the D.A.'s office would file forfeitures locally giving the D.A.'s office a 50/50 split with OHP on the forfeitures instead of filing the forfeitures in Oklahoma City where OHP received 100% of the monies.

8. I did not know the identity of Clint Johnson's confidential informant on the no-knock anytime search warrant affidavit which resulted in the late night warrant execution at Mr. Barrett's house on September 24, 1999. I was and am aware that the name of the informant had been written on a piece of paper by Clint Johnson and placed in an envelope and placed in the court file.

9. After the second state trial, I was contacted by then United States Attorney Sheldon Sperling, who told me he was going to bring "weapons and murder" charges against Mr. Barrett in federal court. I was aware that members of the Highway Patrol were claiming that they were going to see to it that the feds took the case, a situation that intensified after the "disappointing" manslaughter verdict.

10. After Mr. Barrett was charged in federal court, Assistant United States Attorney, Michael Littlefield called me up and asked how he could keep the identity of the confidential informant a secret. Mr. Littlefield stressed that he did not want the information released to the defense. Mr. Littlefield and Agent Johnson were very close.

11. I have read an OSBI report that details allegations that former Sallisaw Police Chief

**DECLARATION OF RICHARD GRAY** 2

Gary Philpot took money off "drug girls."

12. I am currently able to state with confidence that Clint Johnson is a dishonest person and his reputation for truth and veracity was and is very bad.

13. When I first became district attorney I replaced a number of the members of the Drug Task Force upon assuming office. Clint Johnson, a holdover from the previous administration, "begged" me for a job, stating that he had four children he needed to support.

14. Under the Barker-Harrold regime, Johnson had been responsible for keeping account of the money and evidence seized by the Task Force. In June, 2003, I directed the Task Force to keep an inventory, and that two employees were to place seized cash in a safe deposit box. I did not want money being kept at the Task Force office. I had to keep instructing Johnson to keep accurate and close account of the evidence and money seized by the Task Force because Johnson was not adhering to that directive.

15. During my tenure, it was reported to me that Johnson and others had used seized drug money for personal purchases. Seized rifles and shotguns, as well as ammunition, were used by Strout, Johnson, and others on hunting trips. In another instance of misuse of official property, my former first assistant and Johnson took a law enforcement vehicle belonging to the city of Roland, Oklahoma, on a gambling trip to Kansas City, Missouri, a matter which was admitted to by Johnson and Strout when confronted.

16. In January 2004, I directed the Task Force - Clint Johnson in particular - to inventory the monies seized by the task force. Upon forfeiture, when I opened the envelopes certain monies were missing. Two packages containing money were later determined to be "short" what was on the pertinent search warrant returns, a matter that later caused me difficulty. I did not actually

3



open the packages containing the money in order to count it to see whether the amounts jived with what had been reported, because I did not want to contaminate the chain of custody. I was not aware of the problem with these two money containers until July, 2004. In November, 2004, another money container came up short.

17. The Task Force was totally disorganized. When defendants challenged forfeiture actions, money and property would often turn up missing or unaccounted for.

18. I was aware that Mr. Johnson had many money problems which created concerns with his activity on the job. In April, 2004, I confronted Johnson for taking drug money in March, 2004, and "returning" it in April.

19. I am also aware that that Clint Johnson wrote a check for $5,000 without having sufficient funds to cover the check. Mr. Johnson avoided being held accountable on a number of hot checks he passed because his wife Tina Johnson worked in the bogus check division. Tina Johnson is now married to Jerry Moore.

20. I can attest that Clint Johnson is by reputation and conduct known to me personally a liar and wholly unworthy of belief. Had I known then what I know now, I would never have trusted anything Johnson stated in a warrant affidavit.

21. I also know Frank Lloyd of District 27 Drug Task Force and know that Lloyd and Johnson had a falling out after a 2005 Drug Task Force audit over which Johnson claimed he had no responsibility. Mr. Lloyd is now retired but when he worked with the Drug Task Force, his reputation for truth and veracity was also bad.

22. Mindful of the penalties of perjury, I declare the foregoing declaration is true and correct.

**DECLARATION OF RICHARD GRAY**            **4**

Executed on this 20th day of November, 2015 in Wagoner, Wagoner County, Oklahoma.

Richard Gray