# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF OKLAHOMA

KENNETH EUGENE BARRETT, )
                                    )
              *Movant,* )
                                    )
v. )
                                    )
UNITED STATES OF AMERICA, )
                                    )
            *Respondent.* )

---

## EXHIBIT 48

---

TITLE OF
REPORT _INTERVIEW OF RAYMOND C. GRENINGER JR._

**RAYMOND C. GRENINGER JR.,** ███████████████████████████
Hawthorn Court, Pryor, Oklahoma, 918/825-7990, provided the following information:

GRENINGER had been employed as a Trooper for the Oklahoma Highway Patrol (OHP) for fifteen years and ten months. GRENINGER was a member of Troop BT, Bomb Squad, P. O. Box 11415, Oklahoma City, Oklahoma, 405/425-2435, and part time assigned to the OHP Tactical Team since March 21, 1989. GRENINGER'S supervisor was OHP Lieutenant KERRY PETTINGILL.

On Wednesday, September 22, 1999, GRENINGER was notified by PETTINGILL of a tactical mission in Sequoyah County and to report to Camp Gruber, near Muskogee, Oklahoma, at 1200 hours on Thursday, September 23, 1999. On September 23, 1999, GRENINGER went to Camp Gruber and met with PETTINGILL, and several of the OHP Tactical Team. The briefing indicated that law enforcement from Sequoyah County Sheriff's Office and the Sequoyah County District Attorney's Office had requested the OHP Tactical Team to assist in the arrest of KENNETH BARRETT and the subsequent search of BARRETT'S residence for drugs. On September 22, 1999, surveillance photographs and video had been taken of BARRETT'S residence. Based on the surveillance and the location of BARRETT'S residence it was determined that no snipers would be used in the operation. The warrants obtained on BARRETT were "no knock" and for either day or night service.

On September 23, 1999, while at Camp Gruber the OHP Tactical Team conducted several training sessions simulating the actual mission. Additionally, OHP Troopers BUDDY HAMILTON, RICKY MANION and GRENINGER conducted drive bye's of BARRETT'S residence to seek additional information. Final preparation was made for the OHP Tactical Team to proceed to BARRETT'S residence about 0030 hours on September 24, 1999.

On September 24, 1999, at approximately 0001 hours, the OHP Tactical Team left Camp Gruber and proceeded to the rally point located at Dwight Mission Road and Interstate 40 near Sallisaw, Oklahoma. At that location the team met with several of the local law enforcement who would be used as back up after the scene was secured. The OHP Tactical Team, after final instructions, proceeded to BARRETT'S residence.

---

INVESTIGATION ON _10/04/99_ AT _PRYOR, OKLAHOMA_ BY _JON HUNTINGTON_ FILE _CR 99-746_

OFFENSE _HOMICIDE_ VICTIM _DAVID EALES_ CASE AGENT _BEN ROSSER_

OFFICE _NERO_ DATE REPORTED _12/23/99_ DATE TYPED _12/23/99_ TYPIST _kc_ APPROVED _____ IND _090_

This document contains neither recommendations nor conclusions of the OSBI. It is the property of the OSBI and is loaned to your agency; it and its content are not to be distribu outside your agency.

The following were the vehicle and personnel assignments of the OHP Tactical Team:

1. **Vehicle One:** The first vehicle (unmarked OHP white Ford Bronco) was driven by OHP Trooper JOHN MARK HAMILTON with OHP Trooper DAVID EALES on the passenger's side.

2. **Vehicle Two:** The second vehicle (unmarked OHP white Ford Bronco) was driven by GRENINGER with OHP Trooper RICKY MANION on the passenger's side.

3. **Vehicle Three:** The third vehicle (black and white marked OHP Ford Crown Victoria) was driven by OHP Trooper STEVEN HASH with DEA Task Force Agent DANNY OLIVER in the passenger's side.

4. **Vehicle Four:** The fourth vehicle (black and white marked OHP Ford Crown Victoria) was driven by OHP Trooper GENE HISE with OHP Trooper ROBERT DARST on the passenger's side and OHP Trooper BILLY POE in the back seat.

5. **Vehicle Five:** The fifth vehicle (an unmarked white Chevrolet Suburban) was driven by OHP Lieutenant KERRY PETTINGILL with OHP Lieutenant JIM MCBRIDE on the passenger's side.

While traveling toward the BARRETT residence GRENINGER remembered having all his police vehicle lights on but not using any sound. GRENINGER remembered that Vehicle Three also had his police lights (overheads) on but did not remember hearing any sirens. GRENINGER estimated that the distance between team vehicles was at least one car length apart due in part to the dust being thrown up from the gravel road.

The first three vehicles entered onto the property from a makeshift driveway located east of the residence. Vehicles Four and Five took up positions at the front property gate and in the west neighbor driveway, respectively. At the beginning of the east driveway a ditch was observed that the three vehicles had to cross to get on the property. As the three vehicles were entering the property GRENINGER watched Vehicle One bottom out in the ditch. GRENINGER slowed his vehicle down as he went through the ditch. While Vehicle Two was driving through the ditch GRENINGER told MANION that he thought he saw someone standing out in the front yard. The person in the yard was later identified as TOBY BARRETT

As GRENINGER cleared the ditch he heard the sound of an automatic weapon from an unknown location. Due to the limited lighting from the house GRENINGER was unable to determine who was doing the shooting. Vehicle One was positioned at the front porch of the

47

residence. Vehicle One was being shot at and broken glass, debris and smoke could be seen coming off of it on the passenger's side. GRENINGER stopped behind Vehicle One and he and MANION exited. MANION went to the ground and attempted to locate EALES. MANION found EALES who was located behind Vehicle One. Upon seeing that EALES has been shot MANION yelled, "Man Down, Man Down". GRENINGER, upon seeing EALES was injured, ran back to his vehicle and radioed for help.

GRENINGER returned from his vehicle to where EALES was lying. GRENINGER then followed MANION to the east side of the residence. MANION moved toward the east side window and with his MP5 fired a short burst through the window. At about the same time GRENINGER saw HAMILTON near the front porch. HAMILTON had his weapon pointed at the front entrance and was yelling at someone inside. GRENINGER upon seeing HAMILTON, yelled to MANION that HAMILTON was going inside the residence. Once inside the residence, HAMILTON located one individual (later determined to be KENNETH BARRETT) and brought him outside to handcuff.

As BARRETT was being handcuffed, HISE drove through the front gate up to where EALES was lying on the ground. GRENINGER ran to Vehicle Five and informed PETTINGILL they were in need of an ambulance. PETTINGILL advised GRENINGER to get EALES in a vehicle and get him to a hospital. GRENINGER ran back to Vehicle One and attempted to roll the rear window down. GRENINGER was unable to get the window to roll down. Using his pistol, GRENINGER smashed out the rear window. GRENINGER then attempted to lower the rear tailgate but it would not open. Giving up on Vehicle One, GRENINGER went to Vehicle Two and managed to get the rear window and tailgate to work. EALES was placed on the tailgate of Vehicle Two and CPR was conducted by Cherokee County Sheriff (FNU) GOSS. GRENINGER ran to the driver's side of Vehicle Two and intended to drive EALES to the hospital. Since GRENINGER didn't know where the hospital was located, HISE drove instead. Deputy Sheriff CLINT JOHNSON also got in the back of Vehicle Two to assist GOSS with EALES. They left the scene for the hospital.

After EALES was gone GRENINGER, OLIVER, POE, and MANION entered the residence to secure the residence. No one else was found inside. GRENINGER observed HAMILTON had blood on his face and shoulder. GRENINGER obtained HAMILTON'S weapon and placed it in his belt. GRENINGER escorted HAMILTON to an unidentified sheriff's deputy's vehicle and HAMILTON was taken to the hospital.

GRENINGER walked back to the BARRETT residence and was advised by PETTINGILL to put HAMILTON'S weapon on the porch and to document his activity. GRENINGER assisted others in putting up crime scene tape around the scene.

GRENINGER did not fire any rounds from his weapon. GRENINGER was not injured during the incident.