**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

**No. 16-7035**

---

**In re: KENNETH EUGENE BARRETT, Movant.**

---

**RESPONSE IN OPPOSITION TO MOVANT'S MOTION TO FILE A**
**SUCCESSIVE § 2255 MOTION**

---

**PRELIMINARY STATEMENT**

In 1999, an Oklahoma state court issued a warrant for movant Kenneth

Eugene Barrett's arrest after he failed to appear for trial on drug charges. *United*

*States v. Barrett*, 797 F.3d 1207, 1211 (10th Cir. 2015) ("*Barrett II*"). An

informant advised law enforcement that Barrett had isolated himself at home,

where he was selling methamphetamine. *Id.* The informant reported that Barrett

"had promised to kill any officer who came to arrest him." *Id.* The police took

Barrett's threat seriously, understanding that he "routinely carried firearms," his

house was on a dead-end road with little outside cover, and several of his relatives

lived nearby. *United States v. Barrett*, 496 F.3d 1079, 1083 (10th Cir. 2007)

("*Barrett I*"). Considering any effort to arrest Barrett or search his home "high

risk," the police obtained a "no-knock" nighttime service warrant. *Id.* at 1082-83.

They also engaged a tactical team from the Oklahoma Highway Patrol ("OHP") to

lead the execution of the warrant. *Id.* at 1083.

1

On the evening of September 23, 1999, three tactical team members drove past Barrett's house in an unmarked Ford Bronco, conducting surveillance. *Barrett II*, at 1211. After the Bronco passed, Barrett told his cousin that he suspected it belonged to law enforcement. *Id*. The cousin remarked that the officers were probably preparing to serve a warrant, and Barrett replied that, if they did, "he was going out in a blaze of glory." *Id*.; *Barrett I*, at 1083.

Shortly after midnight on September 24, 1999, three tactical team vehicles entered Barrett's property, headed toward his house. *Barrett II*, at 1211; *Barrett I*, at 1084. The lead vehicle was an unmarked Bronco. *Barrett I*, at 1084. Another Bronco and a marked patrol car followed close behind with emergency lights flashing. *Id*. The lights "were bright enough to light up the entire area of Barrett's residence." *Id*. As the vehicles approached the house, gunfire erupted, hitting the lead Bronco in "the middle of the windshield, at approximately 'head level.'" *Barrett II*, at 1212; *Barrett I*, at 1084. The gunfire intensified as the Bronco neared the house. *Barrett II*, at 1212. Around this time, two officers approaching the property on foot encountered Barrett's 16-year-old son in the front yard and subdued him. *Id*. As he was being handcuffed, and after the gunfire had begun, Barrett's son turned toward the house and yelled to his father. *Id*.

The tactical team eventually reached the house. An officer in the lead Bronco, Trooper David Eales, exited and sought cover. *Barrett II*, at 1212; *Barrett*

*I*, at 1084-1085.  Barrett shot Eales three times in the back and arm, killing him.

*Barrett I*, at 1085.  Another officer, Trooper John Hamilton, already wounded with

fragments to the eye and shoulder, also tried to exit the Bronco but was again shot

in shoulder, this time to the rear of the joint.  *Id*.; Tr. 3:539, 544.[1]  After taking

cover, Hamilton looked toward the house and saw Barrett standing in a doorway

holding a rifle.  *Barrett I*, at 1085.  Eventually, officers shot Barrett in the legs and

subdued him.  *Barrett II*, at 1212.  As he was being arrested, Barrett unsuccessfully

reached for a pistol in his waistband.  *Id*.  In Barrett's home, the police recovered a

Colt semiautomatic rifle that held 90 rounds of ammunition.  *Id*.  Barrett had used

the gun to fire 19 rounds at the police as they approached his house.  *Id*.  Inside the

home, the police found cash, firearms and materials used to manufacture

methamphetamine.  *Id*.

Barrett was charged in Oklahoma state court with one count of first degree

murder arising from Eales's death, one count of shooting with intent to kill (for the

shooting of Hamilton), and two counts of discharging a firearm with intent to kill

(for shots fired at two other troopers).  *Barrett II*, at 1212.  An initial state trial

ended in a hung jury.  *Id*.  On retrial, a jury convicted Barrett of two lesser offenses

– manslaughter and battery with a dangerous weapon.  The state court imposed a

30-year prison sentence.  *Id*.

---

[1] "Tr." refers to the trial transcript, cited by volume and page.

After the state proceedings, the U.S. Attorney for the Eastern District of Oklahoma obtained an indictment that charged Barrett with drug and murder offenses. *Barrett II*, at 1212-13. A jury convicted Barrett, as charged, of two counts of causing death through use of a firearm during a drug trafficking or violent crime (18 U.S.C. § 924(c)(1)(A) & (j)(1) (counts one and two)) and one count of killing a law enforcement officer during a felony drug offense (21 U.S.C. § 848(e)(1)(B) (count three)). *Id*. at 1213. The jury recommended, and the district court imposed, a death sentence on count three. *Id*. This Court affirmed, and the Supreme Court denied review. *Barrett I*, *cert. denied*, 552 U.S. 1260 (2008).

In 2009, Barrett filed a motion for relief under 28 U.S.C. § 2255, which the district court denied. *Barrett v. United States*, no. 09–CIV–105–JHP, 2012 WL 3542609 (E.D. Okla. Aug. 16, 2012). On appeal, this Court affirmed in part and reversed in part, remanding for an evidentiary hearing on a claim of ineffective assistance of trial counsel. *Barrett II*, at 1208. On March 14, 2016, Barrett filed a petition for writ of certiorari in the Supreme Court (case no. 15-8565) seeking review of two issues: (1) whether trial counsel was ineffective in failing to request a self-defense instruction, and (2) whether appellate counsel was ineffective in failing to challenge the district court's decision not to submit voluntary manslaughter to the jury as a lesser-included offense. That petition is pending.

On May 12, 2016, Barrett moved for permission to file a second or

4

successive § 2255 motion pursuant to 28 U.S.C. § 2255(h).  Doc. 01019619071

("Mot.").  Pursuant to this Court's order (Doc. 01019620433), this response

follows.[2]

## ARGUMENT

### BARRETT HAS NOT IDENTIFIED AN ARGUMENT PREMISED ON PREVIOUSLY UNDISCOVERABLE EVIDENCE THAT DEMONSTRATES HIS INNOCENCE

Barrett seeks permission to file a successive § 2255 motion in which he

proposes to attack the validity of the warrants that led to raid on his home.  He

further seeks to use the new collateral action to attack the credibility and reliability

of the prosecution's evidence against him.  Mot. 23-29 & Doc. 01019619073

("Prop. § 2255").  Barrett's claims are neither novel nor persuasive, and this Court

should deny him permission to present a successive § 2255 motion composed of

reconstituted contentions that fall far short of demonstrating his innocence.

"Federal prisoners are barred from attacking their federal convictions

through second or successive § 2255 motions except in very limited

circumstances."  *United States v. Kelly*, 235 F.3d 1238, 1241 (10th Cir. 2000).  A

court of appeals may not authorize the filing of such a motion unless the prisoner

makes a prima facie showing that (1) there is "newly discovered evidence that, if

---

[2] Barrett separately filed another request to file a second or successive § 2255
motion (case no. 17-7039), for which the Court has not ordered a response.

5

proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty"; or (2) his conviction or sentence is unlawful under "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). Barrett relies on the first exception.

To meet his heavy burden of establishing "newly discovered evidence," Barrett must show that "the factual predicate for the claim could not have been discovered previously through the exercise of due diligence," and that no reasonable jury would have convicted him had it been apprised of those new facts. *Bey v. United States*, 399 F.3d 1266, 1268 n.1 (10th Cir.2005); *see also In re Shines*, 696 F.3d 1330, 1332 (10th Cir. 2012) (noting standard).

Barrett points to a litany of declarations and documents in an attempt to manufacture a claim of innocence. But the essence of this crime is simple and defies Barrett's theories. Simply stated, the police, armed with a warrant for Barrett's arrest, entered his property with illuminated emergency lights. In response, Barrett shot two of the officers, killing one. Barrett's guilt naturally flows from this tragic, uncomplicated scenario. His request to file a second and successive § 2255 motion recycles stale and inconsistent allegations that fall far short of identifying clear and convincing evidence of his innocence.

A. <u>Pre-Raid Evidence</u>

The first three proposed claims in Barrett's successive § 2255 motion concern the validity of the warrants that led to the entry onto his property. With regard to the search warrant, Barrett attacks the credibility of the affiant, Clint Johnson, and his informant, Charles Sanders.[3] As to the arrest warrant, Barrett argues it was invalid because of inconsistencies in the evidence underlying his drug charge and the likelihood that the defendant knew of his failure to appear. Prop. § 2255 at 22-37.

Barrett has made these arguments before. Barrett filed a motion attacking the validity of both warrants on January 12, 2005. Trl. Doc. 33.[4] In rejecting the motion, the trial court held that any defect in the arrest warrant was inconsequential, as the police were properly permitted to rely on it under the good faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984). Trl. Doc. 105 at 4-7; Trl. Doc. 124 (adopting findings). The court also upheld the search warrant against attacks based, first, on the anonymity of the informant and, second, on the supposed dishonesty of the informant. Trl. Docs. 105, 124, 228. In

---

[3] Barrett also attacks Agent Frank Lloyd and former District Attorney Diane Barker (Prop. § 2255 at 29-34), but fails to show how their conduct invalidates the warrants, much less undermines the conviction.

[4] Throughout this brief, "Trl. Doc." refers to the docket in Eastern District of Oklahoma case no. CR-04-115-P, while "2255 Doc." refers to the docket in Eastern District of Oklahoma case no. CV-09-105-P.

collateral litigation, Barrett has repeatedly attacked the validity of the search warrant based on the asserted incredibility of Sanders and Johnson. § 2255 Doc. 2 at 249-53, Doc. 70 at 279-84, Doc. 95 at 264-70, Doc. 149 at 142-48, Doc. 201-1 at 29-30; § 2255 App. Doc. 01019024041 at 73-78.

The only meaningful distinction between Barrett's current attack on the search warrant and its predecessors is his ironic sponsorship of, and reliance on, a now-recanting Sanders, whom the defendant previously described in venomous terms. *Compare* Prop. § 2255 at 20 (describing Sanders as "a declarant herein"); *with, e.g.,* § 2255 Doc 95 at 101 (describing Sanders as a "chronic liar"), 103 ("pathological liar" and "completely untrustworthy"), 104 ("wholly dishonest"), 107 ("pathetically dishonest"), 148 ("despicable"), 266 ("miscreant"), 267 ("totally unreliable"); Doc. 149 at 4-5 ("[t]he big winner in the snitch sweepstakes"). While Sanders's recantation (Doc. 01019619103) may constitute new evidence, it hardly provides clear and convincing proof of innocence. *See United States v. Ramsey*, 726 F.2d 601, 605 (10th Cir. 1984) (acknowledging the suspect nature of recanted testimony). Sanders's declaration also betrays Barrett's lack of diligence in obtaining the recantation, as the witness states he felt free to change his testimony after Michael Littlefield left the U.S. Attorney's Office. Doc. 01019619103 at ¶ 6. But Barrett knew of Littlefield's departure from the U.S. Attorney's Office when he filed his § 2255 action (*see* § 2255 Doc. 1 at 257, 265, 282).

At trial, Barrett also presented testimony about the origins of his arrest warrant, and the fact that the local court did not appear to have treated it seriously and inform the defendant's bail bondsman of the likelihood of a forfeiture. Tr. 25:5008-29. In his initial § 2255 litigation, Barrett claimed trial counsel failed to present evidence of his ignorance of the arrest warrant. He specifically argued that counsel should have adduced evidence that his state trial could not have occurred on the day he failed to appear and that the state court clerk mailed the warrant to him but did not request a return receipt. § 2255 Doc. 95 at 154-63. Clearly, he has long possessed the basis factual premises of his attack on that warrant as well.

In any event, the validity of the warrants has no bearing on Barrett's culpability. Barrett imputes to Trooper Eales knowledge of the doubts he now raises about the warrants and thereby attempts to establish that the officer was not engaged in official duties when the defendant murdered him. Mot. at 37-38. Barrett, however, had no right to resist the entry to his property by police, whether or not the warrant they were serving was later found to be defective. In a case involving an assault of a Revenue Agent, this Court rejected an argument that the victim was not engaged in "official duties" because he was serving an unlawful summons. *United States v. Young*, 614 F.2d 243, 244 (10th Cir. 1980) (citing *United States v. Heliczer*, 373 F.2d 241 (2d Cir. 1967) for the proposition that official duties encompass actions "within the scope of what the agent is employed

9

to do"); s*ee also Von Kahl v. United States*, 242 F.3d 783 (8th Cir. 2001) (noting rejection of common law right to resist arrest, which was limited to force "absolutely necessary"). Here, Trooper Eales was killed while in uniform and acting within the scope of his employment: any concerns about the warrants was beyond his knowledge and irrelevant to Barrett's guilt.

Barrett repackages other well-worn claims by asserting he now possesses evidence that Johnson knew that Sanders was a liar and that one of the trial prosecutors, Michael Littlefield, was an alcoholic, child-abusing bully. Barrett argues that the trio conspired to present false evidence of the defendant's drug activity. Prop. § 2255 Mot. at 38-51. Barrett has belatedly presented his arguments, which rework prior versions of failed claims.

The core of Barrett's supposed evidence about Johnson and Sanders is the opinion of the state judge (Doc. 01019619075) who granted the search warrant.[5] As to Littlefield, Barrett supplements an attack he began seven years ago with § 2255 claims premised on the former prosecutor's plea to child abuse claims. § 2255 Doc. 1 at 288-91, Doc 2 at 288-91, Doc. 70 at 319-23, Doc. 95 at 303-07, Doc. 149 at 4, 163, Doc. 178 at 140. Barrett did not act diligently in discovering

---

[5] Barrett does not explain how the judge's opinion demonstrates constitutional error. The prosecutors and defense attorneys had no duty to make impermissible inquiries of a sitting state judge. *See* 2000 5 Okl. St. Chap. 1, Appx. 4, Canon 2 (barring judges from voluntarily testifying as character witnesses); Canon 3(B)(8) (2000) (prohibiting judicial commentary on pending matters).

any of the material about Johnson, Sanders or Littlefield.  At most, Barrett has reinforced his earlier complaints about Sanders, Johnson and Littlefield.  *See, e.g.*, § 2255 Doc. 95 at 34-47, 81-108.  But Barrett could have corroborated his allegations long ago, and he cannot maintain that he was unaware of them.

Regardless of Barrett's lack of diligence, the government amply demonstrated Barrett's drug activity by presenting evidence recovered at his home of "a variety of materials related to the production and use of methamphetamine (e.g., coffee filters, hypodermic needles, digital scales, pseudoephedrine, ephedrine tablets, iodine, plastic tubing, toluene)." *Barrett I*, at 1085.  The defendant has not subverted that showing with anything approaching clear and convincing evidence.

Admittedly, Barrett attempts to attack the drug evidence with a claim centered on the implication that Clint Johnson carried red phosphorous in his car and therefore likely planted the material on the defendant.  Prop. § 2255 at 51-56. Barrett's allegation stems from a single discovery that post-dated the trial by several weeks and the murder by more than six years.  *See* 01019619094 (partially-dated Courtney Bates declaration asserting discovery of phosphorous in Johnson's car); § 2255 Doc. 138 at 23-25 (inventory of Johnson's car dated 01-05-06 devoid of reference to phosphorous).  The government had no obligation to disclose facts arising from a local investigation that occurred after the conclusion of trial.  *See Barrett*, 2012 WL 3542609 at *33 (holding local investigations into Johnson were

not in the government's constructive possession).  Moreover, a single discovery of phosphorous in 2006 does not establish, by any evidentiary standard, a pattern of behavior by Johnson or a motive for planting evidence during a 1999 homicide investigation, years before the federal government pursued a drug charge.  And even if it did, it would not clearly and convincingly show that Johnson did so here, or that Barrett was innocent of murdering Trooper Eales.

B. The Actions of Law Enforcement

Barrett's proposed § 2255 motion next attacks the OHP.  Relying on his own post-arrest statement, Barrett claims that troopers beat him after he was handcuffed.  Prop. § 2255 Mot. at 58-60.  But Barrett's self-serving statement fails to demonstrate that any trooper attacked him.  Doc. 01019619152 at 9-11.  In 1999, Barrett identified only one assailant – Sheriff Philpott – and conceded he did not otherwise know who had supposedly struck him.  *Id*.  Barrett cannot show diligence in raising this issue on § 2255, given that he alleged misconduct by law enforcement in a civil suit he began litigating years before his first collateral attack on conviction.  *See* Ex. A (amending original, electronically-unavailable, complaint to add Trooper Hamilton as a defendant); Ex. B (dismissing Trooper Hamilton as belatedly named).  Likely, Barrett did not raise the issue earlier because it has no bearing on his culpability, and may only tend to confirm that the police believed at the time of the crime that the defendant killed Trooper Eales.

Barrett also claims that troopers harassed the EMTs who transported him to the hospital, but only supports the allegation with his investigator's hearsay declaration relating the content of a months-old interview. Prop. § 2255 Mot. at 60-62 (citing Doc. 01019619124). The sole supporting declaration indicates that troopers were angry and Barrett appeared to have been beaten, but does not relate any eyewitness account of a trooper abusing the defendant. *Id*; *cf.* Doc. 01019619154 (noting witness's chronic memory loss); Doc. 01019619155 (contradicting investigator's account of EMT's memory).[6] Even if Barrett could identify admissible evidence of OHP misconduct, all of which is immaterial to his guilt, he fails to explain why he did not raise the issue earlier, as he was necessarily a witness to any abuse. Significantly, his 2006 civil suit contains allegations inconsistent with those appearing here, identifying Sheriff Philpott and his brother, not OHP, as the people who obstructed medical treatment. *See* Ex. A at 14.

Barrett next claims that troopers intimidated people during state court proceedings. Prop. § 2255 at 62-64. He, however, presents no evidence that the supposed activity affected the outcome of the trials or that troopers engaged in intimidation in federal court. Barrett's allegations largely arise from the state judge's opinion (*see* Doc. 01019619075), not established misconduct. The judge

---

[6] To the extent Barrett suffered superficial injuries during his arrest, they are explained by the fact that a trooper dragged him by his hair and another fell on him and pulled his arms back to prevent access to a pistol. Tr. 3:549-50, 5:1112-13.

apparently found uniformed troopers in his courtroom off-putting, but he does not declare that they were overtly coercive to any witness or juror. Prop. § 2255 at 62. Barrett attributes to the OHP anonymous phone calls received by a now-deceased juror, but he has no evidentiary basis for doing so, and only provides a vague second-hand description of four calls. *Id*. at 62-63 (citing Doc. 01019619075). Barrett also argues the troopers expressed disappointment with the state court verdicts, but fails to show that they violated any policy in so doing or acted on their frustration. *Id*. at 63-64. Barrett alleges only one substantive act of misconduct – asserting the OHP Chief refused service of defense subpoenas. *See id.* at 63. However, the defendant does not show that any witness failed to appear after the court ordered his or her appearance. In short, none of the allegations demonstrates prejudicial error, much less provides a basis for exculpating Barrett.

Barrett next proposes a claim that troopers perjured themselves at trial. Prop. § 2255 at 66-70. The allegation stems from inconsistent statements made over the course of multiple investigations and trials, which Barrett could have identified long ago. In particular, Barrett relies on a report by OHP Internal Affairs investigator, Paul Gordon. Gordon's report and investigation were much discussed at trial, and by no stretch of the imagination could they constitute newly discovered evidence. *See* Tr. 3:630-33, 4:686, 811-13, 816, 830, 5:1071, 1075, 1118-20, 1129, 1133-34, 1142-43, 6:1204, 1291-94, 1298, 1317, 1325, 1329-30,

7:1549, 1553-54, 1559, 17:4040-41, 4047-51, 4058-59, 4064.  Trial counsel were also well aware of an investigation conducted by Oklahoma State Bureau of Investigation Agent Ben Rosser, a government witness.  *See* Tr. 3:423, 575, 638-39, 669-71, 5:1118-20, 1120, 1129, 1131-37, 6:1207-08, 7:1559, 14:3133-53, 16:3565, 3669, 3671.  Barrett's lack of diligence in complaining of inconsistencies he could have addressed at trial should bar his proposal to do so in a successive § 2255 motion.

Barrett has been similarly dilatory in pursuing two other claims premised on facts apparent in the trial record – the alleged destruction of a recorded statement and the supposed failure to preserve the crime scene.  Prop. § 2255 Mot. at 70-79.  Those claims, which rely on the records of the defendant's trials, were apparent long ago and baldly rest on speculation that exculpatory evidence ever existed.

Indeed, none of Barrett's claims of official malfeasance permit him to establish his innocence by clear and convincing evidence because he relies on them to advance his far-fetched theory of self-defense.  Under his version of events, Barrett heard his son cry for help, ran outside and saw a vehicle "barreling across his property," then ran back in his house and closed the front door, but was shot without warning by a trooper at his side window just as his door "flew open."  Prop. § 2255 at 59.  Barrett supposedly fell to the floor and reacted by shooting at the "headlights" visible through the door.  *Id*.  To accept Barrett's version of

events, a court would have to believe that the defendant outran the "barreling" Bronco back to his house and that Trooper Manion, the passenger in the second OHP vehicle (Tr. 4:1091, 5:1105-06), managed to approach the defendant's home on foot before the lead vehicle arrived and shot Barrett without provocation. The court would further have to find, counter-intuitively, that Barrett's wounds caused him to fall, and that he then shot from a prone position at an unidentified vehicle, rather than toward the window where Manion stood.

Barrett's story smacks of fabrication. Of course, it makes no sense that Barrett would have responded to shots from a side window by firing on a vehicle at his front door. His assertion that he fired blindly at the Bronco's headlights is belied by the fact that he fired 18 shots into the front of vehicle, most hitting the windshield or passenger door, and that he could not have done so while prone at all times. Tr. 14:3168-3222, 3228-29. Further, the claim that the door "flew open" is inconsistent with Barrett's 1999 statement (*see* Doc. 01019619152 (making no mention of a door opening)), and betrayed by known facts. Doors do not open of their own accord, and Barrett cannot show that the Bronco's occupants stood in his entry when he shot them. Both troopers suffered injuries from bullet fragments, not projectiles that hit them without first passing through an obstruction. *See* Tr. 3:559, 7:1594-95, 1604-06. Moreover, Troopers Eales was assigned to carry a ballistic shield during the entry to Barrett's home and would have presumably done

so had he approached the door.  Tr. 3:541-43, 612-13.  But after the murder, the shield lay on the ground by the Bronco.  *See* Trl. Ex. 5 (attached as Ex. C); Tr. 3:564.  The shield's placement is consistent with the fact that Eales sustained his wounds when he exited the vehicle, not while standing at the door.  Quite simply, no testimony or physical evidence supports Barrett's version of events, and a mountain of evidence refutes it.

Barrett continues with claims that government actors destroyed or manipulated exculpatory evidence.  Prop. § 2255 Mot at. at 70-79.  These contentions are based on the transcripts of Barrett's three criminal trials.  Because the records at the heart of these claims predate the initial § 2255 proceedings, Barrett cannot establish diligence in failing to discover the factual basis for his contentions.  In any event, Barrett's claims are speculative, as they fail to identify any lost evidence, and ultimately devolve to his demonstrably implausible self-defense claim.  Thus, he cannot establish that his spoliation claims would result in a clear and convincing demonstration of innocence.

Barrett next proposes to attack the government's ballistics and crime scene reconstruction evidence.  Prop. § 2255 Mot. at 79-80.  His argument is a warmed-over recapitulation of a previously-failed claim concerning the shortcomings of the government's witnesses.  *See Barrett II*, at 1215-16; *Barrett*, 2012 WL 3542609 at *76.  If he possesses any new evidence to counter the government's forensic

presentation, he fails to identify it, explain its late arrival, or describe its exculpatory value.

Barrett also complains about the language used by a forensic firearms examiner who testified that the defendant's rifle fired the bullet fragment recovered from Trooper Eales. Prop. § 2255 Mot. 80-83. The claim centers on variations between the expert's testimony at the federal trial and the first state trial, along with an attempt to reconstruct the record of the second state trial. If the expert materially altered his testimony, defense counsel could have raised the issue at trial, or § 2255 counsel could have timely raised this issue in 2009. Barrett cannot explain why it has taken him at least seven years to discover supposed inconsistencies that were apparent at the time of trial. In the end, though, it does not matter. Barrett obsesses over differences in verbal formulations that concern shades of meaning, not clear and convincing evidence of innocence.

As a final complaint, Barrett addresses what he sees as flaws in the chain of custody for the bullet fragment that killed Trooper Eales. Prop. § 2255 at 83-87. The chain of custody was much discussed at trial (*e.g.*, Tr. 16:3593-3610, 3672-87, 3693-96), and is belatedly raised now. Further, Barrett cannot succeed in elevating the issue into one of constitutional dimension, much would it allow him to establish his innocence by clear and convincing evidence: deficiencies in the chain of custody go to the weight, not the admissibility, of evidence. *United States v.*

*Thomas*, 749 F.3d 1302, 1310 (10th Cir. 2014).

Seen in isolation or together, Barrett's newly-presented claims do not reflect diligence or suggest the existence of facts that would permit him to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have convicted him. Accordingly, this Court should deny his request to file a second and successive § 2255 motion.

## CONCLUSION

Based on the foregoing reasoning and authority, the government respectfully urges this Court to deny Barrett's request to file a second or subsequent § 2255 motion.

Dated: June 27, 2016.

Respectfully submitted,

MARK GREEN
United States Attorney,
Eastern District of Oklahoma

*S/Christopher J. Wilson*
CHRISTOPHER J. WILSON
520 Denison Ave
Muskogee OK 74401
(918) 684-5175
(918) 684-5130 fax
chris.wilson@usdoj.gov

*S/Jeffrey B. Kahan*
JEFFREY B. KAHAN
Trial Attorney, Capital Case Section
U.S. Dept. of Justice
1331 F. Street, NW; 6th Fl.
Washington, D.C. 20530
(202) 305-8910
(202) 353-9779 fax
jeffrey.kahan@usdoj.gov

## CERTIFICATE OF ECF FILING AND DELIVERY

I, hereby certify that on June 27, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. A Notice of Electronic Filing will be sent via the Court's ECF system to the following counsel of record for the Petitioner/Appellant:

    Mr. David B. Autry dbautry44@hotmail.com
    Ms. Joan M. Fisher Joan_Fisher@fd.org

I hereby certify that I caused a true and correct copy of the foregoing document to be mailed via the United States Postal Service on May 18, 2016, to the following:

    Not Applicable as Defendant Has Counsel

S/ Jeffrey B. Kahan
JEFFREY B. KAHAN


## ADDITIONAL CERTIFICATIONS

I hereby certify as follows:

1. All required privacy redactions have been made pursuant to Fed. R. App. P. 25(a)(5), Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1; Fed. R. Bankr. P. 9037;
2. No hard copies of this pleading are required to be submitted to the clerk's office;
3. This ECF submission was scanned for viruses with the most recent version of a commercial virus scanning program, McAfee Virus Scan, updated July 20, 2015, and, according to the program, is free of viruses.

Dated: this 27th day of June 2016:

S/ Jeffrey B. Kahan
JEFFREY B. KAHAN